IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and CHARLES A. WHOBREY, as Trustee, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 22-cv-6464 |
| v. | ) ) | Judge Robert W. Gettleman |
| UNIVAR SOLUTIONS USA INC., a Washington corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund ("the Fund") and Charles A. Whobrey, as trustee, bring their complaint against defendant Univar Solutions USA Inc., alleging statutory and contractual violations under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. According to plaintiffs, defendant ceased contributions to the Fund without properly terminating its collective bargaining agreement, which breached its obligations to the Fund under its trust agreement in violation of § 515 of ERISA, 29 U.S.C. § 1145. On October 30, 2023, the parties cross-moved for summary judgment (Docs. 32, 37). For the reasons discussed below, the court denies defendant's motion for summary judgment (Doc. 32), and grants plaintiffs' motion for summary judgment (Doc. 37).

**BACKGROUND**

The court takes the factual background from the parties' Local Rule 56 statements of material facts, which are largely undisputed. The Fund is an employee benefit plan and trust that is funded by contributions from multiple participating employers pursuant to collective bargaining agreements between the employers and local unions. Defendant contributed to the

1

Fund on behalf of employees affiliated with the International Brotherhood of Teamsters ("IBT"). The relevant IBT union is Local Union No. 283 ("the Union"), which represents defendant's employees at its facility in Romulus, Michigan, for the purposes of collective bargaining. The Union and defendant entered into a collective bargaining agreement ("the 2016 CBA") that, in relevant part, required certain pension contributions from defendant into the Fund. The 2016 CBA stated that it:

> "shall be in full force and effect from April 1, 2016 to and including March 28, 2020, and shall continue in full force and effect from year to year thereafter unless written notice or desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the day of expiration."

The latter clause is known as an "evergreen clause." The 2016 CBA also provided that:

> "whereto such cancellation or termination notice is served and the parties desire to continue said Agreement but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a notice, at least sixty (60) days prior to March 29, 2020 or April 1 of any subsequent contract year advising that such party desires to continue this Agreement but also desires to revise or change the terms or conditions of such Agreement."

On December 18, 2019, the Fund wrote to defendant and the Union to inform them that "the 2016 CBA will expire on March 28, 2020," and on or about April 2, 2020, defendant and the Union executed a contract extension ("the 2020 extension" or "the extension agreement").[1] The extension agreement stated that "[a]s a result of the state of emergency caused by a nationwide pandemic, and based on a shared sense of social responsibility, the Parties have agreed to extend the Collective Bargaining Agreement covering employees at the Romulus Michigan location until March 28, 2021," with three listed modifications. The extension agreement further provided that "[t]his extension Agreement will immediately be made a part of

---

[1] According to plaintiffs, the 2020 contract extension was unnecessary because the 2016 CBA was already extended to March 28, 2021, under its evergreen clause before defendant and the Union signed the extension agreement. They argue that the evergreen clause kicked in because neither defendant nor the Union had served the required termination notice.

and attached to, the collective bargaining agreement which has been extended."

In addition to its obligations to the Union under the collective bargaining agreement (and the 2020 extension), defendant also had obligations to the Fund. In 2016, defendant and the Fund executed a participation agreement that "set[ ] forth the terms under which [defendant would] participate in the [Fund] . . . in accordance with its collective bargaining agreement with the Union." The participation agreement required defendant to pay contributions to the Fund until defendant was "no longer obligated by a contract or statute."

Defendant was also bound by the terms of the Fund's trust agreement, which required, in relevant part, "[e]ach Employer [to] remit continuing and prompt Employer Contributions to the Trust Fund as required by the applicable collective bargaining agreement, participation agreement, this Agreement and/or other written agreement to which the Employer is a party." The trust agreement provided that defendant's obligation to make employer contributions to the Fund "shall continue (and cannot be retroactively reduced or eliminated) after termination of the collective bargaining agreement until the date the Fund receives from the Employer . . . a collective bargaining agreement signed by both the Employer and the Union that eliminate[s] the duty to contribute to the Fund," or written notice that defendant's negotiations with the Union "have reached impasse after collective bargaining agreement termination and the Employer has lawfully implemented a proposal to withdraw from the Fund."[2]

On January 15, 2021, the Union sent a letter to defendant ("the 1/15/2021 letter") to advise that the Union "desires to continue its existing Agreement, but also desires to negotiate changes or revisions in such Agreement," including changes to wages, hours, working

---

[2] The participation agreement had a similar provision that "agreement[s] that purport[ ] to retroactively eliminate or reduce the Employer's statutory or contractual duty to contribute to the [Fund]" and "agreement[s] that purport[ ] to prospectively eliminate the duty to contribute to the Pension Fund during the stated term of a collective bargaining agreement that has been accepted by the Pension Fund" were unenforceable.

3

conditions, and fringe benefits. On January 27, 2021, defendant sent a letter to the Union ("the 1/27/21 letter"), which stated that defendant "acknowledge[d] receipt of your January 15, 2021[,] letter to reopen the collective bargaining agreement." The letter further stated that "[t]he term of this Agreement and its one[ ] (1) year extension expires on March 28, 2021," and the Union should "consider this written notice that [defendant] proposes the modification or termination of the Agreement and requests to meet and confer with the Union for the purpose of negotiating a successor Agreement during March 2021."

Defendant and the Union then extended the 2016 CBA two more times. On March 16, 2021, defendant sent its opening proposal to the Union, stating, "Withdraw from [the Fund], replace with company 401k plan"; but on March 26, 2021, defendant and the Union agreed to extend the 2016 CBA's terms to April 28, 2021. On April 27, 2021, defendant and the Union reached another agreement to "indefinitely" extend the current terms and conditions, subject to seven days' notice of termination.

The parties dispute when the Fund knew about defendant and the Union's agreement to leave the Fund. Plaintiffs argue that defendant and the Union did not inform the Fund about their agreement to leave the Fund until June 8, 2021, but defendant states that the Fund was aware that defendant was "pressing to terminate their participation" by February 17, 2021. The Fund internally stated that it "[l]ooks like they have a grand plan to terminate everything this year" on March 9, 2021.

Defendant and the Union then entered a new collective bargaining agreement ("the 2021 CBA") on June 9, 2021, which stated that it would be retroactively "in full force and effect from March 29, 2021 to and including March 28, 2025." It required defendant to contribute to the Fund "[e]ffective April 21, 2021 and continuing through July 2, 2021," but stated that

"[e]ffective July 3, 2021, [defendant] will withdraw from and cease making contributions to the [Fund]." On June 17, 2021, the Fund considered "if this withdrawal [from the Fund] is acceptable," after receiving copies of the 1/1/5/21 and 1/27/21 letters and the 2021 CBA. The Fund internally stated that defendant and the Union "are withdrawing from the Fund on July 3, 2021."

On November 16, 2021, defendant sent a letter to the Fund to confirm that it had finalized its withdrawal from the Fund, but the Fund never responded. Yet, on July 12, 2022, the Fund sent a letter to defendant's Tony Behrman ("Behrman") for defendant's non-payment of contributions. In the letter, the Fund stated that "we believe the duty of [defendant] to contribute to the Pension Fund on its Local Union No. 283 ("Local 283") group continued through March 28, 2022 under the terms of the Collective Bargaining Agreement that was effective April 1, 2016 (the "2016 CBA") and the Pension Fund Trust Agreement." The Fund explained that "[w]hether the duty to contribute continued through March 28, 2022 depends on whether a timely notice of desire to cancel or terminate the 2016 CBA was served," and determined that "the letters did not terminate the 2016 CBA and the 2016 CBA automatically remained in effect for another year until March 28, 2022."

## **LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden, and the court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in their favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant

"must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Where both parties file motions for summary judgment, the court applies the same standards of review. See Wis. Alumni Research Found. v. Xenon Pharm., Inc., 591 F.3d 876, 882 (7th Cir. 2010).

## DISCUSSION

Plaintiffs filed the instant suit for $142,381.80 in pension contributions allegedly owed by defendant from July 4, 2021, through March 28, 2022. Pursuant to ERISA, an employer must contribute to a multiemployer pension plan under the terms of the plan or a collective bargaining agreement "to the extent not inconsistent with law," and "in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Both sides argue that they are entitled to summary judgment. At the outset, the court notes that defendant's potential motives for withdrawal from the Fund, as well as any potential withdrawal liability, are not relevant to the instant dispute.

First, plaintiffs argue that they are entitled to summary judgment because the 2016 CBA (which was extended until March 28, 2021 by the 2020 extension agreement) was extended to March 28, 2022, under its evergreen clause, which automatically renewed the 2016 CBA "unless written notice or desire to cancel or terminate" was served sixty days prior to March 28, 2021.[3] According to plaintiffs, neither defendant nor the Union served the requisite timely notice that "unequivocal[ly] and unmistakabl[y]" stated their intent to terminate the 2016 CBA. See Cent. States, Se. & Sw. Areas Pension Fund v. Transservice Logistics, Inc., 56 F.4th 516, 528 (7th Cir. 2022), cert. denied, 143 S. Ct. 2660 (2023). If the 2016 CBA was effective until March 28,

---

[3] Plaintiffs argue that the evergreen clause contains a typographical error, and should read, "unless written notice of desire to cancel or terminate." (Emphasis added). However, this dispute is immaterial, because defendant does not explain how "desire to cancel or terminate the Agreement" could be "served" if not incorporated in a written notice.

6

2022, under its evergreen clause, the parties do not dispute that the 2021 CBA's elimination of defendant's duty to contribute to the Fund is unenforceable.[4]

Conversely, defendant first argues that its duty to contribute to the Fund was eliminated by the 2021 CBA. According to defendant, the 2016 CBA was terminated by the 2020 extension's date-certain termination clause: "[a]s a result of the state of emergency caused by a nationwide pandemic, and based on a shared sense of social responsibility, the Parties have agreed to extend the [2016 CBA] covering employees at the Romulus Michigan location until March 28, 2021." In other words, defendant argues that the 2020 extension nullified the evergreen clause.

Plaintiffs counter that the date-certain termination clause applied only to the 2020 extension's three listed modifications, leaving the evergreen clause intact. If the 2020 extension did not nullify the evergreen clause, it is undisputed that the 2016 CBA would have been subject to automatically renew until March 28, 2022, under that clause. Moreover, according to plaintiffs, defendant's argument is foreclosed by Aluminum Co. of America v. National Labor Relations Board, 159 F.2d 523 (7th Cir. 1946). In Aluminum Co., the Seventh Circuit held that an addendum with a date-certain termination clause that incorporated the preexisting collective bargaining agreement did not nullify its evergreen clause. Id. at 525.

In relevant part, the extension agreement in Aluminum Co. provided that "[t]his instrument . . . shall be considered to be, and is, a part of the agreement entered into on July 20, 1943, . . . [and] is and shall remain in full force and effect until March 24, 1945." Id. The court began its analysis by stating that "the construction and meaning of a written contract is a

---

[4] Defendant argues that its two negotiated extensions of the 2016 CBA with the Union after March 28, 2021, demonstrate that the 2016 CBA was not extended until March 28, 2022, through the evergreen clause. Plaintiffs explain, however, that the extensions were necessary to avoid "legal or economic recourse to support their request for revisions if the parties fail[ed] to agree."

7

question of law . . . [so] the question of whether the addendum extended [the collective bargaining agreement] beyond March 24 is one of law to be determined from an examination of the language of the instruments themselves." Id. Then, the court stated that "[c]onsidered by itself . . . the language of the Addendum terminated the contract on March 24, 1945," but determined that the addendum "was not to be considered by itself" because it stated that it was "to be, and is, a part of the agreement entered into on July 20, 1943." The court held that "[b]y its unambiguous terms," the addendum should be read into the agreement because "[a] mere extension of the termination dates, which is all the language of the addendum proposed to do when interjected into the original contract, would hardly nullify the automatic renewal clause of the [1943 collective bargaining] contract." Id.

In the instant case, the 2020 extension agreement provides that "the Parties have agreed to extend the Collective Bargaining Agreement . . . until March 28, 2021," and that "[t]his extension Agreement will immediately be made a part of, and attached to, the collective bargaining agreement that has been extended." The court agrees with plaintiffs that the extension agreement in this case is similar to the addendum in Aluminum Co., which defendant mischaracterizes.[5] While defendant argues that the instant case is distinct from Aluminum Co. because "the record is replete with evidence that both [defendant and the Union] acted as if the 2016 CBA had been terminated on March 28, 2021," the contract language controls the outcome.

---

[5] Defendant counters that "courts consistently conclude that amending a contract with an evergreen clause to include a definite termination date precludes automatic renewal," but defendant's cited cases are distinguishable. For example, the court agrees with plaintiffs that Michels Corporation v. Central States, Southeast. & Southwest Areas Pension Fund, 800 F.3d 411 (7th Cir. 2015), is distinct. In Michels, the collective bargaining agreement terminated prior to the parties' attempts to extend it. Id. at 421. Moreover, Local 106, Service Employees International Union v. Homewood Memorial Gardens, No. 87 C 0403, 1987 WL 10996 (N.D. Ill. May 12, 1987), is also distinct. In Local 106, the relevant contractual amendment expressly mentioned the evergreen clause. The court explained that "[t]he manner in which the parties drafted the duration clauses clearly indicates that each was intended to wholly supersede and replace the previous duration clause." Id. at *3. In the instant case, none of the three listed modifications in the 2020 extension mentioned the evergreen clause.

Importantly, the fact that the Union and defendant served their 1/15/21 and 1/27/21 letters (which mirror the evergreen clause's language) is inconsistent with defendant's argument that they believed that the 2016 CBA's termination date was set by the 2020 extension.

Thus, the court concludes that the 2016 CBA automatically renewed under its evergreen clause, which extended the 2016 CBA until March 28, 2021. After March 28, 2021, defendant and the Union extended the 2016 CBA two more times. However, defendant would not owe employer contributions to the Fund if defendant and the Union provided sufficient notice of their intent to terminate the 2016 CBA before it automatically renewed another year. That being said, the parties dispute whether the Union's 1/15/2021 letter to defendant, and defendant's 1/27/2021 letter to the Union, conveyed unequivocal and unmistakable notice that they desired to terminate the agreement.

According to defendant, the Union's 1/15/2021 letter conveyed its desire to terminate the 2016 CBA because its "desire[ ] to continue its existing Agreement, but also [its] desire[ ] to negotiate changes or revisions in such Agreement," included changes to wages, hours, working conditions, and fringe benefits. Defendant argues that the Union's desire to negotiate changes to "all material components" showed its desire to functionally terminate the 2016 CBA. Defendant also argues that a party's notice of "desire to negotiate changes or revisions" to the 2016 CBA necessarily contemplated its desire to terminate the agreement based on the contractual language.[6]

The court rejects both arguments. The Union's 1/15/21 letter, even if it states the

---

[6] The 2016 CBA states that "whereto such cancellation or termination notice is served and the parties desire to continue said Agreement but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a notice . . . advising that such party desires to continue this Agreement but also desires to revise or change the terms or conditions of such Agreement." Defendant focuses on the word "whereto," and argues that notice of a party's desire to continue but modify an agreement necessarily requires prior cancellation or termination notice. Plaintiff counters that "whereto" was a typographical error mistaken for "where no."

9

Union's desire to negotiate the 2016 CBA's material terms, does not unmistakably and unequivocally state its desire to terminate the agreement. The words "terminate" or "cancel," or their equivalent, are nowhere in that letter. The court also agrees with plaintiffs that it is not a reasonable interpretation of the 2016 CBA to suggest that a notice "advising that such party desires to continue this Agreement but also desires to revise or change the terms or conditions of such Agreement" necessarily contemplates that a "cancellation or termination notice [wa]s served." Defendant's interpretation is not a reasonable interpretation of the collective bargaining agreement.

Defendant's 1/27/21 letter to the Union is more complicated. The 1/27/21 letter stated that stated that defendant "acknowledge[d] receipt of [the Union's] January 15, 2021 letter to reopen the collective bargaining agreement, and "[t]he term of this Agreement and its one[ ] (1) year extension expires on March 28, 2021." Defendant further stated that the Union should "consider this written notice that [defendant] proposes the modification or termination of the Agreement," and suggested a "meet and confer with the Union for the purpose of negotiating a successor Agreement during March 2021."

According to plaintiffs, the first issue is whether defendant's 1/27/21 letter was timely. They argue that the first day in the notice period was January 28, 2021, because March 27, 2021, is the last day counted. The court rejects this argument and agrees with defendant that even if March 28 is not included in the calculation, 60 days "prior to the day of expiration" is January 27, 2021. It is undisputed that March 28, 2021, is the relevant "day of expiration," resulting in the natural conclusion that March 27, 2021, is the day "prior to the day of expiration." Sixty days prior to March 27, 2021, is January 27, 2021, which makes defendant's 1/27/21 timely.

Thus, the final question is whether defendant's 1/27/21 letter to the Union constituted

10

unequivocal and unmistakable "notice or desire to cancel or terminate the Agreement." As the Seventh Circuit reasoned in Oil, Chemical & Atomic Workers International Union, AFL-CIO v. American Maize Products Company, 492 F.2d 409, 412 (7th Cir. 1974), whether a party gave notice that they intended to terminate a collective bargaining agreement, rather than renegotiate terms, is a question of "reasonable construction." Courts strictly enforce the terms of such agreements when they are unambiguous. See Contempo Design, Inc. v. Chicago & N.E. Ill. Dist. Council of Carpenters, 226 F.3d 535, 546 (7th Cir. 2000).

In the instant case, the court concludes that defendant's 1/27/21 letter did not constitute unequivocal and unmistakable notice to terminate the agreement. It is true that this case is stronger than Oil Chemical, in which the Seventh Circuit held that "[t]he local union's notice of its offer to meet with the employer 'for the purpose of negotiating a new contract or modifications to the present Agreement' was a notice to terminate." 648 F.2d at 411. Here, defendant referenced potential modifications to the 2016 CBA in a "successor agreement," and it also explicitly used the word "termination." The Fund's internal statements (i.e., that it "[l]ooks like they have a grand plan to terminate everything this year," and later that defendant and the Union "are withdrawing from the Fund on July 3, 2021") are further evidence that even certain employees of the Fund interpreted defendant's letter as notice of its intent to terminate.[7]

The instant case is also stronger than the defendant's case in Central States, Southeast and Southwest Areas Pension Fund v. Transervice Logistics, Inc., 56 F.4th 516 (7th Cir. 2022). In Transervice Logistics, the Seventh Circuit rejected the defendant's argument that notice of its desire to renegotiate its collective bargaining agreement was equivalent to notice of its desire to terminate the agreement. Id. at 528. As in Oil Chemical, the defendant in Transervice Logistics

---

[7] It is questionable but immaterial whether the Fund's employee who made those statements actually had the authority to approve the termination of defendant's duty to contribute under the 2016 CBA.

11

did not explicitly use the word "termination" in its notice. Id. at 523. However, despite the relative strength of the instant case, Transervice Logistics does not support defendant's decision because the Seventh Circuit also found that courts "do not infer from a party's expressed desire to negotiate a new contract that it is ready to abandon the in-place agreement regardless of the outcome of the negotiations." Id. at 528.

In Transervice Logistics, the court held that the collective bargaining agreements "continued in force under the evergreen clauses," because the defendant's letters did not express a desire to terminate the agreements "regardless of the success of those negotiations." Id. at 532. The court explained that a party's reference to an agreement's expiration date, stated desire for a "new" contract, attached notice of bargaining, and extrinsic evidence of subsequent negotiations, "considered alone or together," did not express the party's intent to terminate the agreement. Id. at 526. The court reasoned that there is "nothing inconsistent about wanting to negotiate a new agreement while also keeping the current agreement in place unless and until a new deal was reached." Id. at 528.

In the instant case, although defendant used the word "termination" and referenced a "subsequent" agreement, defendant equivocated by stating its desire for "modification or termination." Defendant's opening proposal to "[w]ithdraw from [the Fund], replace with company 401k plan," as well as its two extensions of the 2016 CBA in 2021, are evidence that defendant did not "desire to terminate the agreements even if the negotiations were unsuccessful." Id. at 532. The fact that the Fund may have known that defendant had a "grand plan" to terminate the 2016 CBA does not mean that defendant unequivocally and unmistakably stated its desire to do so.

Thus, the court denies defendant's motion for summary judgment, and grants plaintiffs'

motion for summary judgment.

## CONCLUSION

For the reasons stated above, the court denies defendant's motion for summary judgment (Doc. 32), and grants plaintiffs' motion for summary judgment (Doc. 37). Plaintiff is directed to submit a proposed final judgment order computing all elements of damages, interest, and attorney's fees by Monday, January 29, 2024.

        **ENTER:**

        *Robert W. Gettleman* (signature)
        **Robert W. Gettleman**
        **United States District Judge**

**DATE:  January 22, 2024**